UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RAUL BOLIVAR DEL HIERRO,

        Plaintiff,

v.                                          Case No.  5:04-cv-17-Oc-10GRJ

RONALD SCHAEFER,

        Defendant.

_____

**REPORT AND RECOMMENDATION**[1]

This matter is before the Court upon referral from the Clerk. This case has been pending before this Court since January 2004 and despite several hearings and the entry of a number of orders by this Court, which provided the Plaintiff with more than sufficient time and opportunity to do so, the Plaintiff has failed to establish that this Court has subject matter jurisdiction over his claims. Accordingly, for the reasons explained below this case is due to be **DISMISSED** for lack of subject matter jurisdiction.

**I. PROCEDURAL BACKGROUND**

As evidenced by the docket in this case, this action has languished for almost three years through a series of missteps and inaction by prior counsel for Plaintiff. Because the history of this case is relevant to the Court's decision to dismiss this action, a brief recount of what transpired is necessary.

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

On January 14, 2004 Plaintiff's prior counsel filed a complaint (Doc. 1) purporting to allege claims for breach of an oral contract, unjust enrichment, and fraud in the inducement alleging that on January 27, 1999 he loaned $70,000.00 to the Defendant to start a business in Clermont, Florida. The Plaintiff further alleged that pursuant to the terms of the oral contract the Defendant was required to begin repaying the loan within one year of the operation of the business by paying Plaintiff fifty per cent of the business profits. Although the Plaintiff did not specifically allege that jurisdiction was based on diversity of citizenship, the Plaintiff alleges that he is a resident of Caracas, Venezuela and the Defendant is a resident of Lake County, Florida. Rather than alleging that the damages sought in the action exceeded $75,000.00 Plaintiff alleged that the damages sought in the action exceed $50,000.00 exclusive of interest, costs and attorney's fees.

On April 14, 2004 Plaintiff applied for and obtained a clerk's default against the Defendant. (Docs. 3 & 4.) Even though a clerk's default had been entered, on April 21, 2004 the Clerk docketed an answer to the Complaint, filed by the Defendant *pro se,* which was signed and mailed by the Defendant on April 17, 2004. (Doc. 5.) The Defendant never moved to set aside the clerk's default.

For the next two and a half months the Plaintiff did nothing to prosecute the case further. Consequently, the Court issued an Order To Show Cause directing the Plaintiff to show cause why the action should not be dismissed for failing to file a case management report as required by the Local Rules. Counsel - who was representing Plaintiff at the time - responded to the show cause order advising the Court that he would schedule the case management conference and file the report in the next several

weeks. Again nothing happened in the case until September 17, 2004 when the Plaintiff filed a motion for leave to file a unilateral case management report, which the Court denied on September 20, 2004. (Doc. 10.) Although the Court already had denied Plaintiff's request to file a unilateral case management report - and despite the fact that the Plaintiff represented that he could not contact the Defendant to conduct a case management conference - the Defendant on November 1, 2004 filed a response to Plaintiff's motion contending that the Plaintiff had never contacted him to schedule the case management conference. (Doc. 13.)

The case remained dormant until May 5, 2005 when Plaintiff filed a Motion For Default Judgment, (Doc. 14) requesting entry of a final judgment for an unspecified sum of money. The Court promptly struck the motion because Plaintiff had failed to attach any affidavits or submit any proof in support of his request for the entry of a final judgment. (Doc. 15.) Plaintiff again did nothing and the case remained dormant for seven more months.

Finally, on December 2, 2005 the Plaintiff filed a Second Motion For Default Judgment (Doc.16) requesting entry of a final judgment. This time, however, Plaintiff filed an affidavit in support of his request for entry of a final judgment. The affidavit was executed by counsel for Plaintiff - and not by the Plaintiff himself - and recited that the Plaintiff was owed $70,000.00 plus interest in the amount of $42,000.00, representing interest from January 31, 2000 at the rate of 12% per annum, plus attorney's fees of $2,500.00 and costs of $350.00. This was the first juncture where the Court was made aware of the amount in controversy in this case. As a result, the Court raised for the first time the issue of whether the Court had subject matter jurisdiction over this case and

directed the Plaintiff within fifteen days to show cause in writing why the amount in controversy exceeded $75,000.00.

Plaintiff responded to the Court's directive to show cause why the amount in controversy is in excess of $75,000.00. (Doc. 18.) After the Court had examined the response and concluded that it was inadequate the Court scheduled a hearing. Before the hearing was held the Plaintiff then filed a motion for summary judgment. Thereafter, on June 29, 2006 the Court conducted a hearing to afford the Plaintiff one last opportunity to establish a basis for subject matter jurisdiction. At the conclusion of the hearing the Court entered an Order granting the Plaintiff thirty days to file evidence establishing that the amount in controversy exceeded $75,000.00 exclusive of interest and costs. The Court expressly advised Plaintiff that the Court would dismiss the action for lack of subject matter jurisdiction if Plaintiff failed to establish the requisite amount in controversy.

Plaintiff filed a response essentially asserting that the amount in controversy exceeded $75,000.00 because the Defendant owed fifty per cent of the business profits to Plaintiff. In support of this assertion the only documents filed by Plaintiff were copies of the annual report for a business named "Cafe 92, Inc." and copies of occupational licenses from Polk County, Florida for a business known as "Cafe 92." None of these documents contained information suggesting that the "Cafe 92" related to the loan in this case or more importantly, that Cafe 92 even had any business profits in the years covered by the documents. Notably, the documents had absolutely no information concerning the amount, if any, of business profits earned by the business so that the

Court could ascertain whether these claimed damages could be included in determining the amount in controversy.

Finally, on October 5, 2006, when Plaintiff filed a motion for substitution of counsel, it became self evident to the Court the reason the case had languished for so long and the reason counsel had been unwilling or unable to address the straight forward issue of whether the amount in controversy in this case was or was not in excess of $75,000.00. In the motion to substitute counsel it was disclosed that counsel for Plaintiff had been suspended from the practice of law by the Florida Bar. This was no surprise to the Court based upon counsel's performance in the case up to that point.

Because substitute counsel had now taken over the case, rather than dismissing the case at that time, the Court held one more hearing on October 16, 2006 to address the issue of subject matter jurisdiction. Plaintiff's new counsel argued that punitive damages could be included in determining the amount in controversy and requested permission to file an amended complaint alleging a basis for a claim for punitive damages. The Court granted the request and advised Plaintiff's counsel that if an amended complaint was not filed within twenty days establishing that the amount in controversy exceeds $75,000.00 the Court would not grant any further extensions and without further notice would recommend that this action be dismissed. The time for filing an amended complaint has now passed and Plaintiff has not filed an amended complaint or any other papers since the October 16, 2006 hearing that would establish a basis for subject matter jurisdiction.

## II.  DISCUSSION

This case should not have remained pending before this Court for as long as it has. As evidenced by the procedural history recounted above the Court afforded Plaintiff's prior counsel with ample opportunity to establish that the amount in controversy was in excess of $75,000.00 and counsel either did not understand what was necessary to establish that the Court had subject matter jurisdiction over the claims, or worse yet, counsel knew that he could not do so and inappropriately allowed this case to remain on the docket for almost three years. Apparently, present counsel recognized that he was unable to establish that the amount in controversy exceeded $75,000.00 and has decided not to file anything further. In any event, this case should be dismissed for lack of subject matter jurisdiction without further delay for the following reason.

Pursuant to 28 U.S.C. § 1332, district courts have original jurisdiction of all civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and the parties are diverse. There was never a question in the case that the principal amount of the alleged loan was $70,000.00. The problem was that Plaintiff was unable to establish that the additional amounts he claimed Plaintiff was owed should be included in calculating the amount in controversy.

At various times Plaintiff suggested that the amount in controversy was in excess of $75,000.00 because: (1) the accrued interest when added to the $70,000 exceeded the requisite amount, or (2) the attorney's fees incurred when added to the $70,000 would exceed the requisite jurisdictional amount, or (3) Plaintiff's entitlement to the fifty per cent of the business profits when added to the $70,000 would exceed $75,000, or

(4) punitive damages would exceed the jurisdictional sum. As explained by the Court in its previous orders none of these claimed damages are sufficient to meet the Plaintiff's burden of establishing by a legal certainty that the amount in controversy exceeds $75,000. The Court briefly will address each of these claims in turn.

First, with regard to the inclusion of accrued interest in calculating the amount in controversy, the statute expressly provides that the amount in controversy "excludes interest and costs." Because Plaintiff had improperly included interest of $42,000 in his Second Motion For Default Judgment the Court ordered the Plaintiff to show cause why the amount in controversy exceeded $75,000. As such whether the Plaintiff can prove that he is entitled to perjudgment interest on the loan is not relevant to determining the amount in controversy.

With regard to the inclusion of attorney's fees in establishing the amount in controversy, attorney's fees do not count towards the amount in controversy unless they are allowed by statute or contract.[2] This means that in order to include attorney's fees in the calculation of the amount in controversy the attorney's fees have to be authorized by the contract sued upon or the statute which forms the basis of the claim must authorize the recovery of attorney's fees. Neither situation is present in this case. The alleged "contract" in this case is oral and there is no provision for attorney's fees.

---

[2] Federated Mutual Insurance Company v. McKinnon Motors, LLC, 329 F.3d 805, 808 n. 4 (11th Cir. 2003).

Moreover, Plaintiff has not alleged any statutory basis for his claims, which provide for recovery of attorney's fees.[3]

While a claim for loss of business profits arguably could be included in determining the amount in controversy, the Plaintiff failed to allege in his complaint that the lost business profits were in an amount sufficient to exceed the jurisdictional threshold. And when the Court graciously granted the Plaintiff with several opportunities to correct the deficiency, and establish that the lost business profits when added to the $70,000 principal amount of the loan exceeded the jurisdictional threshold, the Plaintiff was unable to establish that the "business" earned any profits or even if it did that the amount claimed exceeded $5,000.00, which is the additional sum that would be necessary to exceed the $75,000 amount.

Lastly, with regard to punitive damages the Court gave Plaintiff an opportunity to include a claim for punitive damages by filing an amended complaint to attempt to exceed the jurisdictional threshold. However, as the Court anticipated,[4] Plaintiff declined to file an amended complaint - or any other evidence - that would establish that the amount in controversy exceeded $75,000.00.

In sum, this case was - and always has been - nothing more than a simple claim for recovery of $70,000.00 allegedly loaned by Plaintiff to Defendant. In retrospect the

---

[3] Plaintiff's request for fees under Fla. Stat. § 57 is not included in determining the amount in controversy. This provision of Florida law is procedural and not substantive and therefore would not be applicable under *Erie* principles in federal court in a diversity case. Even if it was applicable, however, this provision does not form the basis of Plaintiff's claim but rather merely authorizes the award of attorney's fees where a claim or defense is not supported by the necessary material facts or where a claim or defense is not supported by the application of then existing law to those material facts.

[4] A claim for punitive damages would be highly suspect in a case such as this where the claim is essentially one for money had and received based on an oral agreement.

case should have been pursued in state court and not here.[5] However, because Plaintiff chose to file the case here - and even though the Defendant has not actively defended the claim - the Court is required to examine its subject matter jurisdiction to adjudicate the claims presented to it. Having examined its subject matter jurisdiction the Court concludes that the claims brought by Plaintiff in this case do not involve an amount in controversy in excess of $75,000.00 exclusive of interest and costs and, accordingly, this action is due to be dismissed. While the Court could have - and in retrospect should have - dismissed this case much sooner, the fact remains that this Court does not have subject matter jurisdiction to adjudicate the claims in this case.

### III. **RECOMMENDATION**

For the reasons discussed above, this case should be dismissed for lack of subject matter jurisdiction and the clerk directed to terminate all pending motions and close the file.

**IN CHAMBERS** in Ocala, Florida, on December 20, 2006.

_____
GARY R. JONES
United States Magistrate Judge

Copies to:

    Honorable Wm. Terrell Hodges
    Senior United States District Judge

    All Counsel
    *Pro Se* Defendant

---

[5] At one of the hearings attended by prior counsel the Court inquired as to the reason the case had been filed in federal court and was advised by counsel that he thought he had to file in federal court because his client was a foreign citizen. The Court should have simply dismissed the case at that point but instead opted to give the Plaintiff an opportunity to establish the requisite amount in controversy based upon the representations of Plaintiff's prior counsel that he could establish the requisite amount in controversy.